UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                      CASE NO: 2:15-cr-101-FtM-38CM

DIOSME FERNANDEZ HANO and
REINALDO ARRASTIA-CARDOSO

## **OPINION AND ORDER**[1]

This matter comes before the Court upon review of Defendant Diosme Fernandez Hano's Motions in Limine (Doc. 179) filed on October 10, 2017. The Government filed its Response in Opposition on October 13, 2017. (Doc. 185). The Court held a final pretrial conference on October 19, 2017. The trial commenced October 23, 2017. For the reasons stated on the record, as well as those stated herein, the Court rules on the motions in limine as follows:

### BACKGROUND

This case centers on the robbery of a Brink's Armored Vehicle on November 30, 2009, where multiple individuals absconded with over $1,700,000.00, leaving behind multiple pieces of DNA-based evidence. (Docs. 3 at ¶¶ 8-9; 179 at 11; 185 at 5). One of the Defendants, Hano, then departed the United States for Cuba via a private boat on or

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

about January 13, 2010. (Doc. 185 at 6). In April 2014, Hano attempted to re-enter the United States from Mexico through the Gateway to the Americas Bridge in Laredo, Texas. (Doc. 185 at 6). In the process, he submitted a sworn statement detailing the means and manner of his travel between the United States, Cuba, and Mexico. (Doc. 185 at 6). Subsequently, Hano and Co-Defendant Reinaldo Arrastia-Cardoso were indicted. (Doc. 49).

A.  **HANO'S FIRST MOTION IN LIMINE**

Hano initially moves the Court to preclude the Government from introducing testimony from the Government's expected witness, Ruben Borrego-Izquierdo, about Hano's purported spending in Cuba because (1) it is hearsay and (2) its probative value is substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403. This testimony can be broken into two distinct categories. The first category consists of statements made by Hano to Borrego-Izquierdo, wherein Hano discussed his activities in Cuba and allegedly incriminated himself in the robbery in this case. The second category consists of Borrego-Izquierdo's recollection of statements made by Hano's relatives and various people in Cuba that Hano came to Cuba with a great deal of money in 2010, and that he spent lavishly on the island.

Hano argues that the Government should be precluded from introducing both categories of statements because they are hearsay. In response, the Government argues that the statements Hano made to Borrego-Izquierdo are not hearsay because they are statements of a party opponent. The Government also argues that Borrego-Izquierdo's statements recounting what he had heard from Hano's relatives and individuals in Cuba should be admissible because they will not be introduced for the truth of the matter

asserted, but rather that the statements will be introduced to add context to the conversation between Borrego-Izquierdo and Hano, and to show the effect on Hano when Borrego-Izquierdo told him what he had heard about Hano's spending habits and inquired about where he had received the money to finance the same. (Doc. 185 at 2-3).

Hearsay is an out of court statement offered to prove the truth of the matter asserted. FED. R. EVID. 801(c)(1)-(2). A statement is an oral or written assertion, or nonverbal conduct if the actor intended it as an assertion. FED. R. EVID. 801(a). Hearsay within hearsay, or double hearsay, exists when there is a hearsay statement that contains another hearsay statement within it. *See Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1456 (11th Cir. 1997). Double hearsay "is admissible only if each part of the combined statements conforms with an exception to the hearsay rule." *United States v. Robinson*, 239 F. App'x 507, 508 (11th Cir. 2007). Notably, statements made by a party and subsequently offered against that party are not hearsay. FED. R. EVID. 801(d)(2). By the same token, "an out-of-court statement admitted to show its effect on the hearer is not hearsay." *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015). This is true because it is offered as a basis for inferring something *other* than the matter asserted. *See United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986); *see also United States v. Manati*, 2017 WL 2570005, No. 14-15294, at *3 (11th Cir. June 14, 2017) (finding that a statement is not hearsay when it was offered not to prove the truth of the matter asserted, but instead to explain a subsequent course of conduct).

Turning back to the matter at hand, Hano's comments to Borrego-Izquierdo constitute statements of a party opponent and are admissible as non-hearsay. That said,

3

the admissibility of the statements that Borrego-Izquierdo made regarding what he heard from Hano's relatives or "a lot of people" in Cuba is hearsay and inadmissible.

Next, Hano argues that the testimony about his purported spending in Cuba would foment class prejudice within the jury, and thus should be excluded under Federal Rule of Evidence 403. The Government counters that the evidence it intends to offer will be highly probative and is admissible to prove a sudden acquisition and use of wealth following an alleged robbery, even if the source of that wealth has not yet been verified. *See United States v. White*, 589 F.2d 1283, 1286 n. 7 (5th Cir. 1979).[2] The Court agrees.

The Eleventh Circuit has held that "a court's determination of whether wealth evidence is relevant under Rule 401, Fed. R. Evid., and whether the evidence's probative value is substantially outweighed by its unfair prejudice under Rule 403, Fed. R. Evid., must turn on the specific facts of the case." *United States v. Hope*, 608 F. App'x 831, 838 (11th Cir. 2015). Pursuant to Rule 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. FED. R. EVID. 401(a)-(b). Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." FED. R. EVID. 403.

Here, the robbery occurred on November 30, 2009, and Hano allegedly fled to Cuba on or about January 13, 2010 on a private boat. Given that the testimony will allegedly touch on Hano's purported spending in Cuba, which occurred subsequent to and in close temporal proximity to the robbery, such evidence will have a decided

---

[2] The Eleventh Circuit has adopted, as binding precedent, all Fifth Circuit decisions made prior to the close of business on Sept. 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

4

tendency to make his participation in the robbery more likely, and will be of consequence in this action. Similarly, it is plain that the probative nature of this information outweighs any threat of unfair prejudice. As such, the Court will allow statements made by Hano to Borrego-Izquierdo.

**B.   HANO'S SECOND MOTION IN LIMINE**

Hano moves to preclude the Government from introducing testimony regarding his character and criminal history on the grounds that it is both hearsay and improper character evidence based on alleged prior bad acts. But the Government states that it does not intend to introduce any such evidence unless Hano were to take the stand and put his character in issue. Because Hano's argument depends on events that have not yet occurred, the request is denied as moot.

**C.   HANO'S THIRD MOTION IN LIMINE**

Next, the Government intends to include various documents from Hano's immigration file at trial, including a sworn statement, biographical immigration documents, and a document entitled "Cuban Intelligence Survey." Hano moves to preclude any references to same, arguing that any statements that he allegedly made to Customs and Border Protection ("CBP") Officers regarding his immigration or travel history are inadmissible because: (1) they are hearsay; (2) because the records would violate the "best evidence rule" pursuant to Federal Rule of Evidence 1002; (3) because the history would be unfairly prejudicial and confusing under Federal Rule of Evidence 403; and (4) because of the potential that his immigration history could be considered a bad act that should be excluded under Federal Rule of Evidence 404(b). The Government disagrees

5

with Hano, contending that evidence of Hano's immigration history is not hearsay, is highly probative, and that neither the best evidence rule nor Rule 404(b) apply here.

As a threshold matter, Hano's hearsay objection does not withstand scrutiny. The Eleventh Circuit has held that routinely and mechanically kept immigration records do not violate the public records exception to hearsay. *United States v. Agustino-Hernandez, 14 F.3d 42, 43 (11th Cir. 1994)*. And, pertinently, the public records exception also does not exclude police records "prepared in a routine non-adversarial setting." *Id.*

Against this backdrop, because Hano's immigration history was prepared long before Hano was charged with the alleged offense, and was prepared in a routine, non-adversarial setting, it is admissible here. Similarly, Hano ineffectively objects to the introduction of statements he made to immigration officials. Because the Government is offering statements that Hano himself made, they are not hearsay and are admissible as statements of a party opponent. *See* FED. R. EVID. 801(d)(2)(A).

Next, Hano argues that his immigration history should be precluded from being introduced by the Government because of the best evidence rule. In response, the Government argues that the introduction of Hano's immigration file will not violate the best evidence rule because the documents they intend to introduce are duplicates, and are therefore admissible.

The best evidence rule requires "[a]n original writing, recording, or photograph" to prove the content of a document being offered in to evidence. FED. R. EVID. 1002. That said, an exception to this rule is found where a party intends to offer a duplicate, which is "a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." FED. R. EVID.

1001(e); *see also* Fed. R. Evid. 1003. Because Hano does not address the existence, authenticity, fairness, or admissibility of the Government's duplicate of documents from his immigration file, the Court finds no merit in his objection that the use of same would violate the best evidence rule.

Next, Hano argues that the Government should be precluded from introducing documents from his immigration file because it would be unfairly prejudicial or confusing. The Court cannot agree in total. Rule 403 grants federal courts the discretion to exclude relevant evidence where the probative value would be substantially outweighed by the threat of unfair prejudice or confusion of the issues. Fed. R. Evid. 403. As to Hano's sworn statement, there are portions of testimony for which the Court does not see immediate relevance. Accordingly, the parties conducted an argument on the record wherein the Government agreed to redact various parts of Hano's sworn statement. Among other things, the proffered version of the sworn statement concerns the timing of Hano's departure to Cuba, which was little more than a month after the robbery, as well as his description of the means and method of that departure. This information circumstantially relates to the motivation to move between countries in the immediate aftermath of a crime, and the potential avenue to transport ill-gotten gains. As such, the sworn statement's probative value is high. Moreover, Hano does not indicate why he would incur any unfair prejudice by giving a truthful accounting of his immigration activities. Consequently, to the extent than Hano does incur any unfair prejudice as a result of the entry of the redacted sworn statement, it is outweighed by probative value.

In addition, the Government argues that the biographical immigration forms and the Cuban Intelligence Survey have probative value in the form of documenting Hano's

and Arrastia-Cardoso's presence in the United States over a period of time prior to the robbery. While the Court recognizes the probative value of such information in the biographical immigration forms, it notes that the purpose and sweep of the Cuban Intelligence Survey is unclear. For that reason, and because the status of both Hano and Arrastia Cardoso is already established by the biographical immigration forms, the Court finds that while the biographical immigration forms are admissible, the Cuban Intelligence Survey is not.

Lastly, Hano argues that the Government should be precluded from introducing his immigration history because it could be construed as a prior bad act under Federal Rule of Evidence 404(b). This is the case, Hano argues, because the imagery associated with immigration could be construed negatively and be confusing to the jury. But this characterization departs from the rule. Rule 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). With this in mind, Hano has not alleged that his entry to the United States was either wrong or illegal. Nor has he shown how his entry to the United States would reasonably relate to his character in the context of the robbery he is accused of committing in this case. Consequently, Hano's request must be denied.

**D.    HANO'S FOURTH MOTION IN LIMINE**

Next, Hano seeks to preclude the Government from introducing a DNA profile, created using DNA recovered from the alleged getaway vehicle, from being introduced into evidence. The vehicle's door handle was swabbed by the Florida Department of Law Enforcement for DNA, and at least three DNA profiles were detected. (Doc. 179 at 11).

The vehicle was thereafter destroyed by the Lee County Sheriff's Office prior to Hano becoming a suspect. (Doc. 185 at 8).

Hano argues that his rights under the Due Process Clause of the Fifth Amendment have been violated because the vehicle has been lost or destroyed by authorities, and he has been deprived of the ability to examine same. He also contends that the DNA evidence is not reliable and should be excluded because there were three DNA profiles found on the vehicle, and because the profile associated with Hano had a match frequency of one in twenty people. By contrast, the Government argues that no due process violation will occur by virtue of the admission of the DNA evidence.

On this issue, the Government's duty to preserve evidence:

> must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality . . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta*, 467 U.S. 479, 488-89 (1984) (internal citation omitted). Moreover, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

As the Court mentioned above, the vehicle was destroyed before Hano became a formal suspect. Consequently, the Government could not have known the exculpatory value of that evidence to Hano before its destruction. Also, Hano has proffered no argument or evidence that the Government's actions were in bad faith. Thus, because

the car did not possess an apparent exculpatory value at the time it was destroyed, and because Hano has made no showing of bad faith, Hano's objection will be denied.[3]

**E.    HANO'S FIFTH MOTION IN LIMINE**

Finally, Hano moves to exclude any evidence of Arrastia-Cardoso's arrest by Immigration and Customs Enforcement at Miami International Airport and any related findings. In response, the Government argues that not only does Hano not have standing to mount this argument, but also that it does not intend to introduce any such evidence unless Arrastia-Cardoso were to testify. Consequently, the request is denied as moot.

Accordingly, it is now

**ORDERED:**

1. Defendant's First Motion in Limine is **GRANTED in part, and DENIED in part**.

2. Defendant's Second Motion in Limine is **DENIED as moot**.

3. Defendant's Third Motion in Limine is **GRANTED in part, and DENIED in part**.

4. Defendant's Fourth Motion in Limine is **DENIED**.

5. Defendant's Fifth Motion in Limine is **DENIED as moot**.

**DONE AND ORDERED** at Fort Myers, Florida, this day the 31st of October, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record

---

[3] This evidence objection is now moot as the Government did not seek to introduce the DNA profile from the vehicle door handle.